BRABHAM v. BALTIMORE & O. R. CO.

(Circuit Court of Appeals, Fourth Circuit. November 5, 1914.)

No. 1253.

1. DEATH ☞91—DAMAGES—MITIGATION—LIFE INSURANCE.

In an action for the death of an employé, brought under the Employers' Liability Act (Act April 22, 1908, c. 149, 35 Stat. 65 [Comp. St. 1913, §§ 8657–8665]) for the benefit of his father and mother, evidence that the mother collected $2,500 insurance on the decedent's life was not admissible in mitigation of damages.

[Ed. Note.—For other cases, see Death, Cent. Dig. §§ 99–101; Dec. Dig. ☞91.]

2. APPEAL AND ERROR ☞1050—HARMLESS ERROR—ADMISSION OF EVIDENCE.

In an action under the Employers' Liability Act for the death of an employé, the admission of evidence that decedent's mother, one of the persons for whose benefit the action was brought, received insurance on decedent's life, held not harmless under the evidence, but probably to have affected the amount of the verdict.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 1068, 1069, 4153–4157, 4166; Dec. Dig. ☞1050.]

In Error to the District Court of the United States for the Northern District of West Virginia, at Parkersburg; Alston G. Dayton, Judge.

Action by Leonard W. Brabham, administrator of Raymond H. Brabham, deceased, against the Baltimore & Ohio Railroad Company. Judgment for plaintiff for insufficient damages, and he brings error. Reversed, and new trial granted.

V. B. Archer, of Parkersburg, W. Va. (L. N. Tavenner, of Parkersburg, W. Va., on the brief), for plaintiff in error.

B. M. Ambler, of Parkersburg, W. Va. (J. W. Vandervort, of Parkersburg, W. Va., on the brief), for defendant in error.

Before PRITCHARD, KNAPP, and WOODS, Circuit Judges.

PRITCHARD, Circuit Judge. This is an action in trespass on the case, brought under the federal Employers' Liability Act for wrong-

ful death. On December 27, 1910, Raymond H. Brabham, an unmarried adult, a son of Leonard W. and Mary A. Brabham, was employed as a fireman on a locomotive drawing a train of freight cars on the Ohio River division of the defendant, in the state of West Virginia, and on that day was killed in a collision, which collision was the result of the negligence of the employés of the defendant, other than Raymond H. Brabham. After the death of Raymond H. Brabham, the father, Leonard W. Brabham, qualified as administrator of his estate, and instituted this action for damages in the then Circuit Court of the United States for the Northern District of West Virginia, and on February 7, 1912, filed his declaration. On February 16, 1913, the plaintiff, by leave of the court, amended his declaration. The defendant pleaded not guilty, upon which plea issue was joined, and the case was tried by a jury on June 18, 1913, and a verdict was rendered in favor of Leonard W. Brabham for $500, and in favor of Mary A. Brabham for $2,000. Stipulations were entered in the cause whereby it was agreed in effect that both plaintiff's decedent and the defendant railroad company were engaged in interstate commerce at the time of the collision resulting in the instant death of Raymond H. Brabham; that plaintiff's decedent was at his post of duty, and in the exercise of ordinary care for his own protection; that the cause of the accident was the negligence of the employés other than plaintiff's decedent; and that the negligence of the defendant's employés was the proximate cause of the death of plaintiff's decedent.

During the progress of the trial the defendant was allowed to prove by plaintiff's witness that Raymond H. Brabham carried life insurance in the sum of $2,500, which sum was paid to Mary A. Brabham, the mother of the decedent. The plaintiff, at the conclusion of the testimony, asked for certain instructions. Instruction No. 1 was refused by the court. Exception was taken to the ruling of the court in refusing to give said instruction to the jury.

The proof shows that Raymond H. Brabham was a fireman in the employ of the defendant company; that he was born February 18, 1889, and at the time of his death was 21 years, 10 months, and a few days old; that he resided with his parents, and was unmarried; that he was a stout, hearty, strong, young man, and weighed between 190 and 200 pounds; that the father at the time of decedent's death was about 51 years of age; that the son brought his wages home, and contributed in this way to the support of his father and mother; that his father was a laborer, who could not make enough by his own wages to keep the family; that the decedent worked about the house and garden when he had time, and in this way assisted his father and mother; that he brought his check for his wages home, and delivered it to his mother, who would get the check cashed and use the proceeds; that the father and mother were dependent upon the decedent for support.

Mary A. Brabham, the mother, in testifying as to the dependence of herself and husband upon the deceased son, said:

"If it hadn't been for him, I do not know what we would have done; that is just it. He assisted me by means of money, and by helping clothe me, and bringing his check home, and I would have it cashed, and use it, as I seen fit, with the exception of what he necessarily needed for himself. Q. How

often? A. His check was paid to him every month, and there never was a check he ever drew he didn't give me the most of it. Q. How much? A. Well, different amounts; the amount would vary, of course; sometimes he needed things for himself; in the early part of his work for the B. & O. he didn't draw so much; but in the latter part he would give me at least $50 a month, after he got to be fireman."

Mrs. Brabham, at the time of her son's death, was about 45 years of age. Decedent was earning about $100 a month at the time of his death—to be exact, an average, covering the whole period of his services as fireman, of $82.17 per month.

The jury returned a verdict in favor of the plaintiff below for the sum of $2,500, to which he excepted upon the ground that the sum recovered was inadequate, and the case now comes here on writ of error.

[1] The principal question to be determined in this controversy is as to whether the court below erred in permitting the defendant, over plaintiff's objection, to prove that the mother of the decedent collected $2,500 life insurance on her son's death. Testimony of this character, when considered by the jury, could have but one effect, to wit, to cause the jury to deduct the amount of insurance paid to the mother from such sum as they might think she would be entitled to recover on account of the death of her son.

We have examined the authorities bearing upon this question, and, as a general rule, it has been determined by the state and federal courts adversely to the contention of the defendant. The case of Harding v. Townshend, 43 Vt. 536, 5 Am. Rep. 304, cites the case of Althorf, Administrator, v. Wolfe, 22 N. Y. 358, in approval. In that case the court in discussing this point said:

"It would seem to be a perversion of justice to subrogate the wrongdoer, who has caused the loss, to the rights of the injured party as to his remedy against the insurer."

The case of Carroll v. Missouri R. Co., 88 Mo. 239, 57 Am. Rep. 382, also cites the case of Althorf v. Wolfe, supra, and also the case of Harding v. Townshend, supra. There the defendant set up the defense that plaintiff had collected $2,700 insurance taken out by the husband for the benefit of the plaintiff. The trial court refused to permit the defendant to interpose the same as a defense to the action. In that case the Supreme Court of Missouri said:

"The construction of appellant [defendant railroad company] if allowed, would defeat or modify actions under the statute, where the party killed had, by his own prudence and at his own expense, sought to provide for the maintenance of his family in the event of his death, and would enable the wrongdoer to protect himself to the extent of the insurance against the consequences of his own wrongful and unlawful acts. As against this plaintiff in this action upon the statute for the damages for the death of her husband, we think the matter thus set up in the third special defense was irrelevant and immaterial, and the action of the court in striking it out was, we think, right and proper."

This question was passed upon by the Circuit Court of Appeals for the Eighth Circuit in the case of Clune v. Ristine, 94 Fed. 745, 36 C. C. A. 450. Judge Thayer, who wrote the opinion of the court in this case, among other things, said:

"In the course of the trial the court permitted the defendant to prove, by way of mitigating the damages which the plaintiff might recover, that she had collected from an insurance company, after the death of her son, the sum of about $2,000, and for that reason was not entitled to recover to the full extent of her loss. An exception was taken to the admission of such evidence. We think that the testimony should have been excluded, and that the objection thereto was well taken. When an action is brought against a wrongdoer, he is not entitled to have the damages consequent upon the commission of his wrongful act reduced by proving that the plaintiff has received compensation for the loss from a collateral source wholly independent of himself. This doctrine is well established by the authorities, and is applicable to the case in hand. Suth. Dam. (2d Ed.) § 158, and cases there cited. On the second trial the evidence complained of should be excluded."

To the same effect are the following cases: Kellogg v. N. Y. C. & H. R. Co., 79 N. Y. 72; Terry v. Jowett, 78 N. Y. 338; Baltimore & O. R. Co. v. Wightman's Admr., 29 Grat. (Va.) 431, 26 Am. Rep. 384; Geary v. Metropolitan S. R. Co., 73 App. Div. 441, 77 N. Y. Supp. 54; Illinois Cent. R. Co. v. Prickett, 210 Ill. 140, 71 N. E. 435; North Pennsylvania R. Co. v. Kirk, 90 Pa. 15; Coulter v. Pine Township, 164 Pa. 543, 30 Atl. 490; Lipscomb v. Houston, etc., R. Co., 95 Tex. 5, 64 S. W. 925, 55 L. R. A. 869, 93 Am. St. Rep. 804; Houston, etc., R. Co. v. Lemair, 55 Tex. Civ. App. 237, 119 S. W. 1162.

[2] It is contended by counsel for defendant that, even if the court erred in permitting testimony to be introduced as to the amount of insurance which the mother received, such error would be harmless, in view of the fact that the mother was permitted to testify that the amount of insurance she received was used to pay burial expenses and certain debts. However, a consideration of the evidence impels us to the conclusion that this testimony tended to influence the jury largely in determining the amount which the plaintiff was entitled to recover, and it is but natural that they should have taken this view of the matter. To say the least of it, the evidence was incompetent, and presented an issue not germane to the real question involved in this case, and therefore calculated to mislead and confuse the jury, and as such was prejudicial to the rights of the plaintiff.

It is also contended by counsel for plaintiff that the court below erred in refusing to give certain instructions. A careful consideration of the instructions tendered, in connection with the charge of the court in its entirety, discloses the fact that the learned judge who heard this case stated the law fully and impartially to the jury as respects the questions raised by the pleadings. Such being the case, we do not deem it necessary to enter into a further discussion of this phase of the case.

For the reasons stated, we are of opinion that the court below erred in permitting the defendant to prove that the mother of the decedent received the sum of $2,500 insurance on account of the death of her son. Therefore it follows that the judgment of the lower court should be reversed, and a new trial granted, with instructions for further proceedings in accordance with the views herein expressed.

Reversed.