Greg SCHAEFER, Susie Smith, Colleen Mathison, Peggy Gundersen, Stuart Schaefer and Bridget Schaefer, as children of the deceased, Donald W. Schaefer, and Marilyn T. Schaefer, Plaintiffs-Appellants,†

v.

AMERICAN FAMILY MUTUAL INSURANCE COMPANY, Defendant-Respondent.

Court of Appeals

*No. 92–2769. Submitted on briefs August 18, 1993.—Decided February 10, 1994.*

(Also reported in 514 N.W.2d 16.)

†Petition to review granted.

380

For the plaintiffs-appellants the cause was submitted on the briefs of *Michael J. Luebke* of *Atterbury, Riley & Luebke, S.C.,* of Madison.

For the defendant-respondent the cause was submitted on the brief of *Michael S. Anderson* and *Guy DuBeau* of *Axley Brynelson* of Madison.

Before Eich, C.J., Sundby and Nettesheim, JJ.

EICH, C.J. Donald and Marilyn Schaefer were killed in an automobile accident in May 1990. Their six adult children, the plaintiffs in this case (the heirs), brought a wrongful death action against several defendants, including the other driver involved in the accident and the driver's insurer. The heirs also sued their parents' insurer, American Family Mutual Insurance Company, for "loss of inheritance," claiming that, as a result of their parents' untimely deaths, the size of their expected inheritances had been diminished.

Prior to the accident, Donald Schaefer had purchased a $500,000 life insurance policy listing his wife,

Marilyn, as the sole beneficiary. When the Schaefers were killed in the accident, the policy proceeds became part of their estates and passed to the heirs.

Prior to the trial of their wrongful death action, the heirs filed a motion *in limine* to bar introduction of any evidence regarding the existence of the $500,000 life insurance policy. The trial court denied the motion, and the case was thereafter dismissed, with a reservation of rights on the part of the heirs to challenge the ruling on appeal.

The heirs raise a single issue: whether evidence of their receipt of the life insurance proceeds is admissible in determining their damages for loss of inheritance. We conclude that it is and affirm the trial court's order.

The heirs and the defendants retained expert witnesses to testify as to the extent of the heirs' loss-of-inheritance damages, if any, incurred as a result of their parents' premature deaths.

The heirs' expert utilized an "accumulated surplus" analysis to determine the loss to the senior Schaefers' total estates. Calculating the amount of inheritance that would have accumulated had the Schaefers lived out their statistically expected lifespans, he concluded that the heirs' resulting loss had a present value of $218,474. In arriving at that amount, he did not consider that the heirs inherited the life insurance proceeds.

American Family's expert adopted the general methodology used by the heirs' expert, with one major exception: while the heirs' expert excluded the $500,000 life insurance policy in calculating the loss of inheritance, American Family's expert considered the life insurance proceeds as an inherited asset and concluded that, due to the "early payoff" of the policy, the

383

heirs inherited more than they would have received had the Schaefers lived out their life expectancies.[1] Accordingly, he concluded that the heirs suffered no loss of inheritance.

The heirs' expert agreed that if the early receipt of the life insurance proceeds is to be considered in determining damages, the heirs have suffered no loss. The admissibility of the life insurance evidence is thus dispositive of the heirs' action and this appeal.

The heirs argued to the trial court that considerations of public policy should preclude American Family from arguing that the surviving children benefitted monetarily from the untimely deaths of their parents. The trial court rejected the argument and the heirs appealed.

American Family characterizes the issue as simply one of the admissibility of evidence and argues that, because the admissibility of evidence is within the trial court's discretion, we must uphold the ruling under the traditional deference we pay to discretionary rulings.[2]

---

[1] According to American Family, the heirs' expert overlooked the fact that $500,000 received today is worth substantially more than $500,000 received approximately twenty-two years later (Marilyn Schaefer's remaining life expectancy just prior to the accident).

[2] The limited scope of our review of discretionary rulings is well settled.

> Generally, "[w]e will not reverse a discretionary determination by the trial court if the record shows that discretion was in fact exercised and we can perceive a reasonable basis for the court's decision." *Prahl v. Brosamle*, 142 Wis. 2d 658, 667, 420 N.W.2d 372, 376 (Ct. App. 1987). Indeed, "[b]ecause the exercise of discretion is so essential to the trial court's functioning, we generally look for reasons to sustain discretionary determinations." *Schneller v. St. Mary's Hosp.*, 155 Wis. 2d 365, 374, 455 N.W.2d 250, 254 (Ct. App. 1990), *aff'd*, 162 Wis. 2d 296, 470 N.W.2d 873 (1991).

The essence of the heirs' argument, however, is not that the evidence is irrelevant, but that it should be barred on public policy grounds, and that is a question we review *de novo*. *See Sanem v. Home Ins. Co.*, 119 Wis. 2d 530, 539, 350 N.W.2d 89, 93 (1984) (application of public policy considerations held to be "solely a court function").

■

Wrongful death actions are governed by § 895.04, STATS., which provides, in part: "Judgment for damages for pecuniary injury from wrongful death may be awarded to any person entitled to bring a wrongful death action." Section 895.04(4). And although the statute entitles surviving children to recover damages for pecuniary loss resulting from a parent's wrongful death, it is well established that such damages are not automatically recoverable; the survivors must prove their losses. *Keithley v. Keithley*, 95 Wis. 2d 136, 138, 289 N.W.2d 368, 370 (Ct. App. 1980).

■

In *Estate of Holt v. State Farm Fire & Casualty Co.*, 151 Wis. 2d 455, 460, 444 N.W.2d 453, 455 (Ct. App. 1989), we held that a pecuniary injury is "a loss of any benefit which the beneficiary would have received from the decedent if the decedent had lived." Similarly, the Wisconsin Supreme Court has held that pecuniary injury can be measured as "such sum as will equal the value of such support and protection of the [surviving family member] as the [deceased] would have furnished during the time [the deceased] probably would

---

*Steinbach v. Gustafson*, 177 Wis. 2d 178, 185, 502 N.W.2d 156, 159 (Ct. App. 1993). If the trial court considered the facts of the case and reasoned its way to a reasonable, legally sound conclusion, we will affirm the decision even if it is one with which we ourselves do not agree. *Id.* at 186, 502 N.W.2d at 159.

have lived." *Maloney v. Wisconsin Power, Light & Heat Co.*, 180 Wis. 546, 547, 193 N.W. 399, 399 (1923). Generally, claims for pecuniary injury are referred to as "loss of support and contribution" claims. *See* 1 THE LAW OF DAMAGES IN WISCONSIN §§ 16.28-.38 (Russell M. Ware et al. eds., 1993). In Wisconsin, however, the concept of pecuniary injury also includes loss of inheritance: the "amount the deceased might reasonably have saved *and* left to the surviving . . . beneficiaries." *Id.* at § 16.39. In the heirs' situation, the measure of loss-of-inheritance damages is the difference between the size of their expected inheritance and what they actually received.

■

Loss-of-inheritance claims have been long recognized in Wisconsin. In *Rudiger v. Chicago, St. P., M. & O. Ry.*, 101 Wis. 292, 302-03, 77 N.W. 169, 173 (1898), the supreme court held that, in fixing damages in a wrongful death action, juries should consider "the addition that the earnings of [the] deceased would probably have made to his [or her] property, had he [or she] continued to live, and the reasonable expectation which plaintiff had of pecuniary advantage by ultimately receiving a share of such earnings, as one of [the deceased's] heirs."

In support of their argument that considerations of public policy should bar evidence of the life insurance policy at trial, the heirs point to the standard Wisconsin jury instruction on pecuniary loss for the death of a parent, which provides in part as follows:

> The term "pecuniary loss" means the same as financial loss, and in . . . assessing damages to the plaintiff children, you are to restrict it to that meaning. You are not to include anything in your answer . . . on account of any grief or injury . . . on the part of

386

the plaintiff children, *nor should the fact that the [deceased's] death may have hastened the period when the children came into possession of the [deceased's] estate be considered by you in arriving at your answer [with regard to pecuniary damages].*

WISCONSIN J I—CIVIL 1880 (emphasis added).

The comments accompanying the instruction note that the "hastening" language is based on two cases which the heirs cite in their brief: *Keasler v. Milwaukee Elec. Ry. & Light Co.*, 195 Wis. 108, 217 N.W. 687 (1928), and *Stahler v. Philadelphia & R. Ry.*, 49 A. 273 (Pa. 1901).

In the first case, Keasler, an adult child whose mother was killed in an accident, brought a wrongful death action to recover for his pecuniary injury. Pursuant to divorce judgments, Keasler was to pay a total of $7,000 to his son and former spouse upon the death of his mother. Because of his mother's accidental death, he became obligated to pay the money at least eight years earlier than he had expected, and he sought to recover the interest he owed on money he borrowed to pay his divorce-related obligations. *Keasler,* 195 Wis. at 110, 217 N.W. at 688.

The Wisconsin Supreme Court rejected Keasler's claim, holding that there was no pecuniary injury resulting from his mother's death: "no pecuniary contributions which the mother had been making to the son or would have made in the future were cut off by her death." *Keasler,* 195 Wis. at 113, 217 N.W. at 689. The court concluded that the mother's death "merely fixed the time when [Keasler's divorce-related] obligations . . . were to take immediate effect." *Id.* Based on its determination that Keasler had not shown any pecuniary injury, the court held that the fact that his mother's death "hastened the period when the plaintiff

came into possession of the mother's estate" was "immaterial." *Id. Keasler* does not advance the heirs' argument.

The plaintiffs in *Stahler* were three adult sons who had been receiving yearly allowances from their father. Following the father's death, they brought a wrongful death action claiming pecuniary injury based on the termination of their allowances. The defendant argued that, because the sons inherited their father's estate, they actually benefitted monetarily from his death. *Stahler*, 49 A. at 273. The Pennsylvania Supreme Court concluded that the sons' inheritance was irrelevant to the loss of their yearly allowance: "The true question is, what had these plaintiffs the right to expect to receive from the parent *during* his life? [A]nd for the loss of this they are to be compensated. *What they got after his death does not enter into the case.*" *Id.* at 274 (emphasis added).

While the heirs' argument is facially supported by *Stahler* and similar cases, all those cases involved claims for loss of support, rather than loss of inheritance,[3] and we agree with the trial court that the two

[3] *See, e.g., D'Angelo v. United States*, 456 F. Supp. 127, 131, 133 (D. Del. 1978), *aff'd*, 605 F.2d 1194 (3d Cir. 1979) (in wrongful death action for loss of support brought by a widow and children, insurance proceeds received from sources wholly unconnected with the defendant tortfeasor cannot be considered in reduction or mitigation of damages); *Cincotta v. United States*, 362 F. Supp 386, 407, 409 (D. Md. 1973) (collateral source rule precludes consideration of life insurance proceeds in determining pecuniary damages for loss of "comfort and support"); *Lebel v. Swincicki*, 93 N.W.2d 281, 284 (Mich. 1958) (surviving minor children's receipt of life insurance proceeds irrelevant to determination of pecuniary damages for loss of support as "the provision [for] insurance was not designed to be in lieu of the support payments"); *Muradian v. Paganessi*, 128

types of damages are conceptually and legally different. As the *Stahler* court stated, claims for loss of support relate to what the surviving party had the "right to expect to receive from the parent during his [or her] life." *Stahler*, 49 A. at 274.

Thus, life insurance proceeds are collateral to a claim for loss of support, for, notwithstanding their receipt, the support previously provided by the deceased has been terminated, and that is the issue in a loss-of-support case. In loss-of-inheritance claims, however, life insurance proceeds are highly relevant to the primary issue in such cases: the difference between what the heirs *would* have inherited and what they *actually did* inherit. *See Castello v. Landwehr*, 28 Wis. 522, 532 (1871).

The heirs argue, however, that as a matter of public policy, American Family should be precluded from arguing that the heirs benefitted monetarily from their parents' deaths. They refer us to the *Stahler* court's remark that, if insurance proceeds are to be considered in determining the children's damages, "we should have the indecent spectacle of an investigation whether the loss of a parent . . . was or was not in fact an advantage rather than a loss . . . . The law does not open the door to anything so shocking." *Stahler*, 49 A. at 274.

A. 158, 159 (N.J. 1925) (in action for wrongful death, where a surviving brother had been supported by the deceased, admission of evidence of the amount of life insurance received by the brother was error); *El Paso Elec. Ry. v. Buttrey*, 260 S.W. 897, 901-02 (Tex. Civ. App. 1924) (evidence of life insurance policy irrelevant to mother's claim for pecuniary injury for the "probable amount that [her son] would have contributed to her support had he lived").

It is undisputed in this case that the heirs inherited the proceeds of the $500,000 life insurance policy through their parents' estates. And we believe that in the context of a loss-of-inheritance claim, that fact does not suggest that they somehow impermissibly or unconscionably "benefitted" from their parents' deaths—any more than any survivor or heir who inherits money or property, or receives life insurance proceeds, can be said to "benefit" from a death. Rather, we agree with American Family that the conclusion that the heirs suffered no financial loss in this situation merely demonstrates that they did not suffer the *particular type* of damage for which they seek recovery in this action.[4] We are not persuaded by the heirs' "public policy" argument.

The heirs also argue that the collateral source rule should bar introduction of evidence of the policy proceeds. Under that rule, "a plaintiff may recover the reasonable value of all items of loss, regardless of whether the plaintiff received compensation for his [or her] damages from a source other than the tortfeasor." *American Standard Ins. Co. v. Cleveland*, 124 Wis. 2d 258, 262, 369 N.W.2d 168, 171 (Ct. App. 1985).

---

[4] We note that in *Stahler* the court was concerned that, if surviving children were found to have "benefitted" from a parent's death, they would be left without a remedy. *Stahler v. Philadelphia & R. Ry.*, 49 A. 273, 274 (Pa. 1901). As American Family points out, however, that concern is not present in the heirs' situation because, in addition to suing for loss of inheritance, they "exercised their right to sue for loss of society and companionship." Thus, although the heirs are unable to demonstrate that they suffered pecuniary injury, they are not left without a remedy.

We reject this argument as well. The collateral source rule can only apply to situations where it has been established that the plaintiff suffered damages.[5] And while in many cases an inheritable estate would be larger had the deceased lived longer, the evidence in this case establishes that the heirs' inheritance was not diminished, but was actually enhanced, as a result of the "early payoff" of the life insurance policy. Because they did not suffer any loss-of-inheritance damages, the collateral source rule is inapplicable.[6]

*By the Court.*—Order affirmed.

SUNDBY, J. (*dissenting*). Wisconsin's wrongful death statute, § 895.04, STATS., "has for its purpose the compensation of the survivors for the pecuniary bene-

---

[5] *See American Standard Ins. Co. v. Cleveland*, 124 Wis. 2d 258, 266, 369 N.W.2d 168, 173 (Ct. App. 1985) (tortfeasor is liable to plaintiff for past medical bills and past wage loss where plaintiff had already recovered for such damages from his own insurer); *Sambs v. City of Brookfield*, 95 Wis. 2d 1, 19, 289 N.W.2d 308, 317 (Ct. App. 1979) (tortfeasor is liable to plaintiff for past medical and hospital expenses despite fact that plaintiff had not been obligated to pay those expenses), *rev'd on other grounds*, 97 Wis. 2d 356, 293 N.W.2d 504 (1980), *cert. denied*, 449 U.S. 1035 (1980).

[6] We note, too, that the collateral source rule is based on the widely accepted rationale that tortfeasors must be held liable for their own wrongs; they "should not gain the advantage of gratuities which an injured party receives from a third party." *Estate of Holt v. State Farm Fire & Casualty Co.*, 151 Wis. 2d 455, 461, 444 N.W.2d 453, 455 (Ct. App. 1989). However, where, as here, the party from whom damages are sought is not the tortfeasor, but the deceased's own insurer, application of the rule is less compelling.

fits which they would have derived from the earning power of the deceased if he had lived." *Nichols v. United States Fidelity & Guar. Co.*, 13 Wis. 2d 491, 497, 109 N.W.2d 131, 135 (1961). The way to analyze this case is to consider whether the children of Donald and Marilyn Schaefer have a cause of action under § 895.04 for the wrongful death of their parents. Clearly they do. The appropriate analysis therefore is whether American Family is entitled to offset, against the children's recovery, the benefit the children obtained from their parents' premature death because they were the beneficiaries of their father's life insurance policy. The real issue in this case is whether this is the kind of special benefit which may be set off in mitigation of the children's damages. It is distracting to analyze the issue in terms of "loss of inheritance."

The RESTATEMENT (SECOND) OF TORTS § 920 (1977) states the rule:

> When the defendant's tortious conduct has caused harm to the plaintiff or to his property and in so doing has conferred a special benefit to the interest of the plaintiff that was harmed, the value of the benefit conferred is considered in mitigation of damages, to the extent that this is equitable.

However, "[d]amages resulting from an invasion of one interest are not diminished by showing that another interest has been benefited." *Id.*, cmt. b. Plaintiffs' damages for the wrongful death of their parents may not be diminished by showing that their right to inherit has been benefited.

In *Marciniak v. Lundborg*, 153 Wis. 2d 59, 72-74, 450 N.W.2d 243, 248-49 (1990), the court concluded that the "benefit rule" found in § 920 of the Restatement should not be applied to the situation in which a healthy child was born to a mother subsequent to an

allegedly negligent sterilization operation. The court concluded that it was not equitable to apply the benefit rule in the context of the tort of negligent sterilization. *Id.* at 73, 450 N.W.2d at 249. I conclude that it is not equitable to apply the benefit rule to relieve the under-insured motorist carrier of its contractual obligation. The children's right to inherit from their parents is not remotely connected to their right to recover for the wrongful death of their parents.

The "special benefit" rule is not, however, the same as the "collateral source" rule, which applies only when the injured party has been compensated for his or her damages from a collateral source. Here, there is no relation between the proceeds of the insurance policy on the life of the plaintiffs' father and the damages the children have sustained by reason of the wrongful death of their parents.

Without mentioning the collateral source rule, the New Jersey Supreme Court stated: "It has been held in numerous cases that it was error in an action for damages for wrongful death to admit evidence of the amount of insurance collected on the life of the deceased." *Muradian v. Paganessi*, 128 A. 158, 159 (N.J. 1925) (per curiam) (citing *Brabham v. Baltimore & Ohio R.R. Co.*, 220 F. 35 (4th Cir. 1914)).

American Family does not claim the right to offset against the children's damages the proceeds of their father's life insurance policy. It argues, rather, that the money those proceeds could earn should be determined and offset against the children's recovery. I see no conceptual difference between the life insurance proceeds and the amount of money those proceeds will produce over time.

The law applicable to this case is well summarized in *Meyer v. Clark Oil Co.*, 686 S.W.2d 836, 839-40 (Mo.

393

Ct. App. 1984) (Normile, Special Judge, dissenting). The majority decided the case in a few lines on procedural grounds and therefore the dissent contains the sole discussion of the factual issues. Judge Normile cites numerous cases for the proposition that "[t]he 'American' rule is that assets inherited from a deceased person do not diminish the damages suffered by his heirs from his wrongful death." *Id.* at 839. He states:

> The modern authorities agree with the "American" rule. "The fact that one or more beneficiaries . . . inherits property from the deceased does not diminish damages recoverable." Restatement of Torts 2d, Damages, Sec. 925 Comment H, page 531 . . . . "In determining the damages suffered as a result of a tortious act . . . an indirect benefit to plaintiff, . . . resulting from defendants wrongful act can not be set up in mitigation of damages." . . . Restatement of Torts 2d, Damages, Sec. 920A, page 514, Sec. 920b, page 510.

*Id.* (citations omitted).

American Family, as the Schaefers' underinsured motorist insurer, stands in the shoes of the negligent tortfeasor. I see no reason in equity or in law that it should gain a windfall simply because the life of the person killed by the tortfeasor was substantially insured. I therefore dissent.