Greg SCHAEFER, Susie Smith, Colleen Mathison, Peggy Gundersen, Stuart Schaefer and Bridget Schaefer, as children of the deceased, Donald W. Schaefer and Marilyn T. Schaefer, Plaintiffs-Appellants-Petitioners,

v.

AMERICAN FAMILY MUTUAL INSURANCE COMPANY, Defendant-Respondent.

Supreme Court

*No. 92–2769. Oral argument January 10, 1995.—Decided May 10, 1995.*

(Also reported in 531 N.W.2d 585.)

For the plaintiffs-appellants-petitioners there were briefs by *Michael J. Luebke* and *Atterbury, Riley & Luebke, S.C.*, Madison and oral argument by *Michael Riley.*

For the defendant-respondent there was a brief by *Michael S. Anderson, Guy DuBeau* and *Axley Brynelson,* Madison and oral argument by *Guy DuBeau.*

HEFFERNAN, CHIEF JUSTICE. This is a review of a published decision of the court of appeals, *Schaefer v. American Family Mutual Insurance,* 182 Wis. 2d 380, 514 N.W.2d 16 (Ct. App. 1994), which affirmed a judgment of the circuit court for Dane County, Mark A. Frankel, Circuit Judge. In an action claiming damages for loss of inheritance, the circuit court denied plaintiffs' *motion in limine* seeking to exclude from evidence proof that the plaintiffs (heirs of Donald Schaefer) inherited the proceeds[1] of a $500,000

---

[1] The "proceeds" of the life insurance policy we refer to throughout this opinion constitute the **death benefit** arising

773

life insurance policy on the decedent, Donald Schaefer. As a result of the circuit court ruling that the evidence could be admitted at trial, the parties entered into a stipulation on the record agreeing to dismiss the action with prejudice, but preserving plaintiffs' right to appeal the order in respect to that item of damages. Plaintiffs entered into the stipulation believing that, if the insurance proceeds were admitted at trial and if defendant's methodology for computing damages was allowed by the court, they had no claim for lost inheritance.

The sole issue on review is whether evidence of receipt of insurance proceeds by heirs bringing a wrongful death action seeking pecuniary damages for lost inheritance should be excluded at trial on public policy grounds. We conclude there is no public policy reason to exclude evidence of insurance proceeds in claims for lost inheritance. The proper focus of the inquiry is on the nature of the loss and how that loss should be measured when one of the decedent's assets is a life insurance policy, rather than, as the defendant suggests, on whether the Schaefer children benefitted from their parent's premature death.[2]

---

under Mr. Schaefer's TransAmerica life insurance policy which was paid to his wife's estate and, thereafter, inherited by the Schaefer children.

[2] Plaintiffs suggest that we should not permit American Family to argue that the heirs benefitted from the untimely death of their parents because to do so is "indecent." Plaintiffs refer to a remark made by the court in *Stahler v. Philadelphia & Reading R.R.,* 199 Pa. 383, 386–87, 49 A. 273 (1901), that if insurance proceeds are to be considered in determining the children's damages, "we should have the indecent spectacle of an investigation whether the loss of a parent or child was or was not in fact an advantage rather than a loss . . . The law does not

We define lost inheritance as the pecuniary value of the addition to the estate which the decedent in reasonable probability would have accumulated and left to his or her heirs had the decedent lived a natural life span. Relevant evidence may include, but is not limited to, that which is relevant to the decedent's ability to save and to otherwise accumulate money or property, the decedent's earnings in excess of expenses for personal maintenance and support of dependents, and the decedent's disposition toward his or her beneficiaries. To the extent that evidence of the decedent's life insurance policy is relevant to these or other relevant considerations,[3] they are admissible at trial.

We hold that, as a matter of law, evidence that Donald Schaefer owned a life insurance policy when he died is relevant to establishing the decedent's propensity for thrift and savings and relevant to establishing the decedent's earnings in excess of expenses for personal maintenance and support of dependents. Whether the insurance policy at issue is relevant to the damage computation, however, cannot be determined by this court on the record. Furthermore, evidence that plaintiffs received proceeds from the policy's death benefit is not relevant to establishing the claim for lost inheritance because these plaintiffs were not named as beneficiaries to the life insurance policy. Therefore, the

---

open the door to anything so shocking." *Stahler* is inapposite, however, because the issue before the court was loss of support rather than loss of inheritance.

[3] For a detailed list of the elements of proof necessary to establish a claim for lost inheritance *see Proof Of Loss Of Prospect Of Inheriting Increased Estate From Decedent* 24 AM JUR PROOF OF FACTS 2d § 24–211 at 239 (1980); *see also* 1 Russell M. Ware et al., THE LAW OF DAMAGES IN WISCONSIN § 16.40 at 16–42 (1994)

policy per se cannot be used to infer the decedent's beneficent disposition toward the plaintiffs. Nor, is the death benefit from a life insurance policy includable in the damage computation because it is neither a form of savings relevant to establishing the decedent's propensity toward thrift, nor a form of investment.

On remand, if plaintiffs can establish to a reasonable certainty that Donald Schaefer intended to divest himself of the life insurance policy and invest the cash value, then the probable value of any increases to the decedent's estate from the investment would be included in the formula, discussed *infra* section V, used to compute damages. If the decedent had no such intent then the policy, although relevant to the above-stated considerations, would not be used in the damage computation.

## I.

We turn first to the facts. Plaintiffs, the adult children and heirs of Donald and Marilyn Schaefer, brought a wrongful death action pursuant to sec. 895.04, Stats., against defendant, American Family Mutual Insurance Company, the uninsured motorist carrier of the deceased.[4] In that action, plaintiffs sought to recover only one item of pecuniary damage: lost inheritance.

Mr. Schaefer was 60 years old at the time of the accident. He had been successful in business and at the time of his death, he and his wife left an estate valued

---

[4] The initial complaint named the driver of the other vehicle and her insurer as defendants. Later, plaintiffs filed an amended complaint naming American Family as a defendant as well. Before trial, all parties, except American Family, settled their claims with plaintiffs.

at approximately $1.8 million.[5] The estate included a house, real estate holdings, several insurance policies and other miscellaneous investments. For the purposes of this review, we are concerned only with the life insurance policy Donald Schaefer purchased from TransAmerica in 1984. At the time of his death on May 3, 1990, Mr. Schaefer had paid $55,240.11 in premiums on this policy and it had a cash surrender value of $22,237.19.[6] Because Mrs. Schaefer was the sole beneficiary of the policy, when she died in the same accident with her husband the policy became part of her estate. The Schaefers' wills left their estates to the children in equal shares. Had the Schaefers lived their actuarial

---

[5] The components of the Schaefer's estate and the value of each asset are not in dispute. The data provided below is taken from the report prepared by American Family's expert economist, John P. Matthews. The report was introduced and identified as exhibit 2 at Matthews' deposition.

| TransAmerica policy | 499,984 |
|---|---|
| House | 69,800 |
| Life insurance | 16,972 |
| Accidental death | 63,184 |
| Other investments | 1,184,385 |
| | 1,834,325 |

[6] The amount of the premiums paid and the cash surrender value of the policy are included in Plaintiffs' *Response to Defendant's Request for Admissions,* filed December 11, 1992. The cash surrender value of $22,237.19 was calculated based on three deductions: total administrative charges of $4,971.60; mortality deductions of $10,531.32; and a surrender charge of $17,500.00. *Id.*

life expectancies, Mr. Schaefer would have died in 2008, and Mrs. Schaefer in 2013.[7]

During the course of pretrial discovery each party retained an expert economist. The plaintiffs' expert, using an "accumulation of surplus" method to determine the lost value of the Schaefers' estate,[8] calculated the total amount the Schaefers had saved over their working lifetimes, as reflected on their estate tax returns, and divided this sum by the number of years

---

[7] Although experts for both parties estimate the Schaefers' actuarial life expectancy to be 2008 and 2013 respectively, neither indicated the source for the estimate.

[8] Plaintiffs' expert, Richard Perlman, defines *lost value of estate* as follows: "lost value depends on the future length of Mr. Schaefer's productive life had the fatal accident not occurred and the pattern of expected increases in the value of the estate." *See Perlman Deposition,* Exhibit A at 2.

The "accumulation of surplus" approach used by plaintiffs' expert appears very similar to a formula termed "future accumulations," which is one of three methods currently used to compute the size of the recovery for loss of estate. *See* 3 Marilyn Minzer et al., DAMAGES IN TORT ACTIONS § 23.10 at 23–5 (1994); *see also* 1 Stuart M. Speiser, et al., RECOVERY FOR WRONGFUL DEATH AND INJURY § 3:2 at 19–30 (3rd ed. 1992). "Future accumulations" is explained as follows:

> In determining the probable amount of accumulations, the jury may consider earnings and investments, income from management of rental property and capital, as well as the factors used to calculate future earning capacity in non fatal cases such as past earnings, age, health, business capacity, education, habits, experience, energy, morals, social adaptability, skill, present and future business prospects at time of death, and probable duration of life. In addition, any evidence that tends to demonstrate thrift and frugality is admissible to prove the decedent's ability to accumulate wealth.

See 3 Minzer et al., Damages In Tort Actions § 23.11 [1][b] at 23–13– 23–14 (1994).

they had worked. This yielded a number, which, in theory, represented the average amount of surplus savings the Schaefers had accumulated annually. Plaintiffs' expert added the $500,000 proceeds from the decedent's TransAmerica life insurance policy to this sum.

Plaintiffs' expert anticipated that the Schaefers' estate would continue to accumulate surplus each remaining year of Mr. Schaefer's work life because he assumed (1) Mr. Schaefer's income would continue to be greater than his expenses, thereby enabling the estate to continue to accumulate surplus savings; and (2) that Mr. Schaefer would continue to prudently invest the surplus. Using the sum which reflected the Schaefers' average annual surplus savings, discounted to present value, plaintiffs' expert adjusted the sum to reflect the social security benefits the couple would receive in the future and their post-retirement consumption. According to plaintiffs' expert, the resulting sum—$262,721—represented the lost value of the estate.[9]

American Family's expert adopted the same general methodology—although with different numbers—to calculate the present value of the Schaefers' future earnings. But rather than assume that the net future accumulation—reduced to present value—represented the lost inheritance, this expert proposed a different comparison. First, the present value of Mr. Schaefer's future earnings was determined. This sum was then added to the value of the estate the day before the Schaefers died. American

---

[9] *See Perlman Deposition,* at 46 and 47. We note that Plaintiffs' brief at page 5, attributes a different sum to their expert—$218,474. This latter sum is cited generally to Perlman's deposition, without a pin point cite.

Family's expert then compared the present value difference between the value of the estate at the time of the Schaefers' death and the value of the estate the day before the couple died. This methodology is illustrated below:

| | APRIL | MAY |
|---|---|---|
| TransAmerica policy | 55,000 | 499,984 |
| House | 69,800 | 69,800 |
| Life insurance | 16,972 | 16,972 |
| Accidental death | 0 | 63,184 |
| Other investments | 1,184,385 | 1,184,385 |
| | 1,326,157 | 1,834,325 |
| Present value of future earnings & consumption | 140,123[10] | 0 |
| Total | 1,466,280 | 1,834,325 |
| | (before) | (after) |
| | [$368,045] | |

Comparing the value of the Schaefers' estate the day before and the day after the accident, American Family concludes that, because the inheritable estate

---

[10] The report prepared by American Family's economic expert, John P. Matthews, provides in part:

Net result:

The consumption, even at the modest amounts listed above, will reduce the Present Value of Future earnings and Consumption to $140,123. Thus, the best estimate of the monetary impact on the 1990 Present Value of the Estate by the untimely and unfortunate accident will be an increase of $368,045. This increase in estate value is the result of the early payoff of the large TransAmerica policy and the avoidance of the effects of consumption late in life.

See Matthews Deposition, "Analysis of the Schaefer Estate" Exhibit 2 at 2.

was $368,045 greater after the accident, plaintiffs are not entitled to a claim for lost inheritance. Plaintiffs concede, if American Family's damage computation is accepted, then they have no claim for lost inheritance.

## II.

We turn now to the parties substantive arguments. At oral argument on plaintiffs' *motion in limine* plaintiffs conceded the relevance of the evidence they sought to exclude, but argued that it should be excluded, nonetheless, on grounds of public policy. Plaintiffs' public policy argument rests primarily on the assertion that the policy reasons for excluding the receipt of insurance proceeds in the context of lost support should apply to claims for lost inheritance because both are pecuniary, both are calculated from the projected future earnings of the deceased, both are triggered by the wrongful death of the decedent and both are intended to remedy the impact of that death.[11]

---

[11] Plaintiffs point out that evidence of insurance proceeds is generally excluded in wrongful death cases by application of the collateral source rule. They contend that the rule should apply here as well because American Family stands in the shoes of the tortfeasor and, therefore, should not benefit indirectly from the decedent's insurance.

Given the nature of the claim for lost inheritance, however, the tortfeasor does not benefit per se from the insurance policy. As we explain, plaintiffs may use an insurance policy to establish a number of relevant considerations including the decedent's propensity for thrift and savings and the decedent's earnings in excess of expenses for personal maintenance and support of dependents. In the appropriate circumstances, the cash or collateral value of an insurance policy may also be relevant to the damage computation. Assuming the policy is relevant, the only party who stands to benefit from it is the plaintiff/heir.

In the alternative, assuming the insurance proceeds are admissible at trial, plaintiffs object to the methodology employed by American Family's expert to compute damages. Plaintiffs contend that inclusion of the insurance proceeds would not affect their claim for damages if the proper computation were undertaken.

American Family contends that, as a result of the Schaefers' death, the insurance proceeds became part of the decedent's inheritable estate, and, as such, the proceeds must be included in the overall valuation of the estate because lost inheritance compensates the beneficiary for the difference between what the decedent would have accumulated and left at death and what the heirs actually received upon the decedent's death. In the instant case, the heirs actually received the death benefit from Donald Schaefer's TransAmerica life insurance policy.

Moreover, American Family disputes plaintiffs' characterization that lost support and lost inheritance are substantially similar claims. They point out that lost support seeks to compensate the beneficiary for the stream of income lost by virtue of the decedent's death; whereas lost inheritance seeks to compensate the beneficiary for the lost value of the inheritable estate. In a claim for lost support the value of the decedent's inheritable estate is not at issue; therefore, evidence that the beneficiary received insurance proceeds is excluded on grounds of relevance or by application of the collateral source rule. By contrast, in a claim for lost inheritance the value of the estate is integral to the claim. According to American Family, neither of the grounds used to support exclusion of insurance proceeds in the context of lost support apply to claims for lost inheritance.[12]

[12] American Family also disputes plaintiffs' characterization that it stands in the shoes of the tortfeasor citing *Employers*

The circuit court denied plaintiffs' *motion in limine* rejecting plaintiffs' assertion that lost inheritance and lost support are substantially similar claims justifying exclusion of insurance proceeds, for similar reasons, in each context. The circuit court distinguished lost support from lost inheritance as follows:

> [T]here is a very significant difference between wrongful death claims which are based on a claim of loss of support and those that are based on a claim for loss of inheritance . . . . In the case of loss of support, insurance is really a collateral matter and is not part of the actual direct economic calculation in terms of whether there was or was not a loss of support, and it is the contrast in terms of relevance that distinguishes this case from a loss of support case. . . . . I am ultimately persuaded here that this is a matter of direct relevance and that the case law from the loss of support area does not fairly translate into the loss of inheritance type of claim that's presented in this case, and for that reason the plaintiffs' Motion in Limine would have to be denied.

*See Transcript of Proceedings,* July 14, 1992, 27–29. Following the circuit court's decision to deny plaintiffs' *motion in limine* the parties entered into a stipulation on the record which provides in part: "The court's rul-

---

*Health Insurance v. General Casualty,* 161 Wis. 2d 937, 951, 469 N.W.2d 172 (1991) for the proposition that an uninsured motorist carrier does not stand in the shoes of the tortfeasor simply because this form of insurance is required by statute. *General Casualty* held that the plaintiff's health insurer could not sue the plaintiff's uninsured motorist carrier for benefits paid under the doctrine of equitable subrogation. American Family suggests that the same analysis should apply in this context to the underinsured motorist carrier. As noted *ante* fn. 11, we do not address this aspect of the parties' argument.

ing dated July 27, 1992 regarding the 'loss of inheritance' issue eliminated that item of damages from the case. The parties have settled all other remaining issues and a release has been executed reserving to the plaintiffs the right to appeal that order and continue pursuit of that item of damages." Based on this stipulation, the circuit court ordered the matter dismissed with prejudice and without costs to any party. Plaintiffs appealed and the court of appeals affirmed the circuit court decision. Review was granted by this court.

### III. *Wrongful Death Damages: Lost Inheritance*

Although Wisconsin has long recognized that pecuniary damages for lost inheritance are recoverable in an action for wrongful death, the issue presented here is one of first impression. In determining whether evidence of receipt of life insurance proceeds by heirs bringing a wrongful death action seeking pecuniary damage for lost inheritance should be excluded for public policy reasons, we first examine the nature of the claim.

Historically, Wisconsin juries have been entitled to award lost inheritance damages when the plaintiff had established (1) the future probable earnings of the deceased and (2) that the plaintiff would have received a share of such earnings. In *Castello v. Landwehr,* 28 Wis. 522 (1871), the earliest Wisconsin decision on point, the court affirmed a judgment of $1,500 on a wrongful death action brought by the decedent's widow under the Wisconsin wrongful death statute to recover damages for the pecuniary injury resulting to the next of kin of the deceased by reason of his death. The court approved the following jury instruction:

In case you find for the plaintiff, in assessing her damages, you are not limited to the simple value of the support and protection of herself and the support and education of her children, but **you may also consider the increase that the earnings of Castello would have made to his wealth and property, had he continued to live, and the reasonable expectation which the plaintiff had of pecuniary advantage by ultimately receiving a share of such earnings, as one of his heirs or next of kin, and damage may be given in respect to that expectation being disappointed and the probable pecuniary loss resulting therefrom.** But you must be satisfied that pecuniary injury will probably result as the proximate damages of such death.

*Castello,* 28 Wis. at 532 (emphasis added).[13]

---

[13] *Castello* was followed by three decisions that approved similar jury instructions. In *Rudiger v. Chicago St. P.M. & O.R. Co.,* 101 Wis. 292, 77 N.W. 169 (1898), the court reversed a $4,000 judgment on a wrongful death claim brought by the decedent's widow because it was excessive under the Wisconsin statute which permitted the jury to give damages not exceeding $5,000. The approved instruction stated that the jury should consider "the addition that the earnings of the deceased would probably have made to his property, had he continued to live, and the reasonable expectation which plaintiff had of pecuniary advantage by ultimately receiving a share of such earnings, as one of his heirs." *Id.* at 302–03.

In *Ryan V. Oshkosh Gas Light Co.,* 138 Wis. 466, 120 N.W. 264 (1909), the decedent's widow sought to recover damages for the pecuniary value of the life of plaintiff's intestate, who was electrocuted, it was held that an award of $7,000 was not excessive. The approved instruction provided that the jury was entitled "to consider the addition that the earnings of the deceased would probably have made to his property had he continued to live and the reasonable expectations which plain-

The language of the present-day jury instruction for lost inheritance is virtually identical to the language approved in *Castello, Rudiger, Ryan,* and *Tidmarsh.* Recovery continues to require proof of two components: (1) the probability that the decedent would have accumulated an estate and (2) the reasonable certainty that the plaintiff would have been the recipient of the estate. Wisconsin Civil Jury Instruction 1880, provides in part:

> In arriving at your answer to this subdivision, you will consider the number of years the (father)(mother) would probably have lived had it not been for the injury sustained as a result of the accident; **the reasonable expectation of the amount of (his)(her) estate and property being increased, and the reasonable expectation which the plaintiff children had of pecuniary advantage by ultimately receiving a share of such earnings as one of (his)(her) next of kin.**

tiff had of pecuniary advantage by ultimately receiving a share of such earnings as one of his heirs." *Id.* at 474.

In *Tidmarsh V. Chicago, M. & St. P.R. Co.,* 149 Wis. 590, 136 N.W. 337 (1912), the court reversed a judgment for the widow on her wrongful death action because the trial court refused to submit the question of contributory negligence to the jury. On review the court stated that the lower court had properly "told the jury to consider the future probable earnings of the deceased had he lived which they were reasonably certain she would have received from him, and the additions that the earnings of the deceased would probably have made to his property had he continued to live, and the reasonable expectation which the widow had of pecuniary advantage by ultimately receiving a share of such earnings as one of his heirs." *Id.* at 599.

As the instruction makes clear, in order to recover for loss of inheritance it is necessary for the survivor to show not only that the decedent would probably have accumulated an estate, but also that the survivor probably would have inherited some or all of the estate from the decedent. In *Harris v. Kelley,* 70 Wis. 2d 242, 253, 234 N.W.2d 628 (1975), we observed that beneficiaries may recover damages which represent "that part of the deceased's prospective estate which would have gone to the beneficiary as an heir (*Tidmarsh v. Chicago, M. & St. P. Ry. Co.* (1912), 149 Wis. 590, 136 N.W. 327)."

The damage suffered by loss of inheritance does not include everything that the decedent might have left to the heirs. Recovery is limited to the pecuniary value of the addition to the estate which the decedent in reasonable probability would have accumulated and left to his or her heirs had the decedent lived a natural life span. *See* 24 AM JUR PROOF OF FACTS 2d § 6 at 234 (1980); J. Stein, DAMAGES AND RECOVERY: PERSONAL INJURY AND DEATH ACTIONS § 243 (1972). For the purposes of computing damages, the jury may only consider the probable addition, if any, to the decedent's estate rather than all other property the decedent might have left. *See Railroad Company v. Barron,* 72 U.S. 90 (1866).[14]

---

[14] In *Barron* the Supreme Court held the proper test for the amount of recovery in claim for loss of prospective inheritance is the additional amount the decedent would have added to his personal estate if he had not died. This holding comports with Wisconsin's early case law, discussed *ante* fn. 13.

*Barron* is particularly instructive with regard to the jury instruction offered by the defendant railroad, and rejected by the Court. The approved instruction provided in part:

Properly understood, insurance proceeds cannot be used to reduce the damage recovery in a claim for lost inheritance because the damage suffered as a result of the loss is the *additional amount,* in reasonable probability, the decedent would have added to the estate had the decedent lived a natural life span.

> The jury have a right, in estimating the amount of pecuniary injury, to take into consideration . . . the relations between him and his next of kin, the amount of his property, the character of his business, and the prospective increase in wealth likely to accrue to a man of his age with the business and means which he had. . . .

*Railroad Company v. Barron,* 72 U.S. at 94. The instruction rejected by the Court provided:

> 3d. That if the persons for whose benefit this action is brought have received in consequence of the death of said Barron, and out of this estate inherited by them from him, a pecuniary benefit greater than the maximum amount of damages which could, under any circumstances, be recovered in this action, then, as a matter of law, they have by the death of said Barron sustained no actual pecuniary injury for which compensation can be recovered in this action.

*Id.* at 92. We construe the latter, rejected instruction to suggest that if the actual amount of the inheritance received by the plaintiff exceeds the statutory amount they are otherwise entitled to, then there is no claim for lost inheritance because the plaintiff has suffered no compensable injury. American Family makes a similar argument here suggesting that plaintiffs have suffered no compensable injury because the value of the estate they inherited was greater than the value of the estate the day before the Schaefers died.

We think the defendant railroad in *Barron* and American Family misunderstand that the damage suffered as a result of lost inheritance is the *additional amount* the decedent in reasonable probability would have added to the estate had he or she lived. Hence, the pecuniary value of the injury in a claim for lost inheritance is not diminished by the value of the estate the plaintiff inherits.

Under this formulation, plaintiffs are entitled to inherit the decedent's estate and they are also entitled to the pecuniary value of any addition to that estate the decedent, in reasonable probability, would have accumulated and left to them. Nor is there a double recovery under this formulation because plaintiffs receive the value of the decedent's estate and, if successful in their claim for lost inheritance, they receive only those *additional* sums the decedent might have accumulated. It is only the *additional* sums which constitute "lost" inheritance. Therefore, we conclude there is no basis for the assumption made by American Family, that lost inheritance is measured by the difference between the value of the estate the day before and the day after the decedent's death.[15]

■

Evidence relevant to establishing a claim for lost inheritance may not necessarily be relevant to the damage computation. Relevant evidence may include: (1) the earnings, if any, the decedent probably would have added to his or her estate; (2) the decedent's age, health and next of kin; (3) the amount of the decedent's present earnings; (4) the decedent's propensity toward thrift and industry; (5) the decedent's prior accumulations; and (6) the decedent's disposition toward the beneficiaries. *See* 1 Russell M. Ware et al., THE LAW OF DAMAGES IN WISCONSIN § 16.40 at 16–42 (1994).[16]

---

[15] On this point, AM JUR PROOF OF FACTS 2d explains: "The decedent's capital investments would pass to his heirs on his death, and thus as to the amount of such investments there would be no loss to the heirs as a result of the decedent's untimely death." *Id.* § 6 at 236 (1980).

[16] Many of these same factors are used to calculate earning capacity in a personal injury action. 3 Minzer et al., DAMAGES IN TORT ACTIONS § 23.11 at 23–6 (1994).

██ We conclude that evidence that the decedent, Donald Schaefer, owned a life insurance policy on which he had paid premiums, and which had a cash surrender value at the time of his premature death, is relevant to establishing the decedent's propensity for thrift and savings and the decedent's earnings in excess of expenses for personal maintenance and support of dependents. Whether the policy is also relevant to the damage computation set forth *infra* in Section V, may be explored on remand. Plaintiffs may, if they choose, attempt to establish that the decedent intended to use the cash value of the policy for investment purposes. If this intent is proved to the trier of fact, then the value of the investment would be relevant to the damage computation.

### IV. *Lost Support & Lost Inheritance*

Plaintiffs' argue that lost inheritance and lost support are substantially similar claims and therefore, the policy reasons for excluding the receipt of insurance proceeds in the context of lost support should apply, as well, to claims for lost inheritance.[17] The policy reason

[17] The difference between the two claims was well described—in language characteristic of the times—by Professor Thomas F. Lambert, Jr., editor of the ATLA Law Journal, during the course of an address he made at the 1958 convention of the American Trial Lawyers Association:

When you kill a very wealthy man, you do not give the widow just one thing, the value of her lost contributions, what he would pay over to her every month. You do not give her just the lost contributions. You have deprived her of that and the expectation of accumulations to her husband's estate, and that is her lost inheritance. If the man brings some $10,000 home each month he is not going to hand her the $10,000. He may give her $1,000 to run the house on and put the rest away in the bank or in annuities or stocks

underlying the exclusion of insurance proceeds in the
context of lost support, is that the insurance was not
intended to accrue to the benefit of anyone negligently
or otherwise wrongfully causing the decedent's death.
*Lebel v. Swincicki,* 354 Mich. 427, 93 N.W.2d 281
(1958). In light of our determination that the death
benefit of Donald Schaefer's insurance policy cannot be
used to establish the fact or the amount of the loss, the
policy reason relevant to exclusion in the context of lost
support does not apply here because evidence that
plaintiffs received the proceeds from an insurance pol-
icy can not be said to inure to the tortfeasor's benefit.

We examine the nature of the claims to discern
their dissimilarity. A claim for lost support is brought
by someone who is legally or actually dependent upon
the decedent for support.[18] For this claim to succeed,
the survivor must provide evidence of the decedent's
past and future earning capacity in order to establish
the likelihood that, during the expected life span, the
person would have continued earning income and sup-
porting the survivors. A survivor claiming lost support
must also provide evidence indicating present and
probable future dependence on pecuniary assistance
from the decedent. *See* 1 Russell M. Ware et al., THE

and bonds. You see the point. He left an estate fat enough for her.
Therefore, it follows, does it not, that if you tortiously cut down that
bread-winner, and in this case a bread-winner and cake-winner,
you deprive the widow of not only contributions, what he handed
over from time to time, but also of the reasonable value of the
accumulations to his estate. This is the loss of inheritance.

*See* 1 Stuart M. Speiser et al., RECOVERY FOR WRONGFUL DEATH
AND INJURY § 3:40, at 192–93 (3rd ed. 1992) (*citing* 1958 NACCA
Convention Transcript § 20.24).

[18] *See* 3 Minzer et al., DAMAGES IN TORT ACTIONS § 22.10 at
22–74 (1994).

LAW OF DAMAGES IN WISCONSIN §§ 16:29–16:37 (October 1994).

By contrast, evidence to support a claim for lost inheritance must establish that the deceased would have accumulated more than would have been spent during an expected lifetime and that the survivor would have received the inheritance.[19] Lost inheritance measures only the *probable increases* to the decedent's estate from the time of the premature death until the time the decedent would have died naturally; whereas lost support seeks to compensate the survivor for the stream of income lost by virtue of the decedent's premature death. Accordingly, we conclude that lost support and lost inheritance are substantially dissimilar claims and that there is no public policy basis to exclude evidence of insurance proceeds in a claim for lost inheritance as there is in a claim for lost support.

## V. *Calculating Lost Inheritance Damages*

Wisconsin's early wrongful death cases—*Castello, Rudiger, Ryan and Tidmarsh,* as well as present-day civil jury instructions (1860, 1865 and 1880), mandate that the recoverable loss in a claim for lost inheritance is limited to the pecuniary value of any addition to the

---

[19] 3 Minzer et al., Damages In Tort Actions § 22.21 at 22–186–186 (1990), similarly defines "loss of inheritance" as follows: "The loss of inheritance consists of the amount of money or property which the deceased could reasonably have been expected to amass during his or her normal life expectancy, after reduction of anticipated expenditures. Accordingly, the loss represents an expected pecuniary benefit—which would have been realized through inheritance—over and above the loss of the decedent's contributions and support."

estate that the beneficiaries would have enjoyed from the decedent's skillful management had he or she lived.

One method of calculating the amount of the lost inheritance is to determine the decedent's probable gross lifetime earnings, deduct the amount he would have spent for his own maintenance, gifts, support of dependents, and other expenditures, and then reduce the remainder to present value. *See* 24 Am Jur Proof Of Facts 2d § 6 at 234. This formula, termed "net accumulations," is appropriate when the decedent dies before he or she has actually accumulated an estate.[20]

A variation of this formula is appropriate when the decedent dies having already accumulated an estate. This approach, which is similar to the "future accumulations" approach employed by plaintiffs' expert, takes into account prospective increases in the decedent's estate as a result of successful investments if it can be shown that the decedent had demonstrated an ability

---

[20] The net accumulations formula has been used by a number of jurisdictions. *See Higgins v. Kinnebrew Motors, Inc.,* 547 F.2d 1223 (5th Cir. 1977) (applying Florida law, decedent's personal expenses and support of survivor must be deducted from decedent's net business or salary income in calculating net accumulations); *Wilson v. United States,* 637 F. Supp. 675 (S.D.N.Y. 1986) (although it was reasonable to assume that the 50-year-old deceased would have earned about $15,000 per year for slightly more than 14 years, it was very unlikely that she would have accumulated any appreciable excess over and above her normal living costs); *Moorhead v. Mitsubishi Aircraft Int'l, Inc.,* 828 F.2d 278 (5th Cir. 1987) applying Texas law, loss of inheritance damages are appropriate only where the wrongful death plaintiff shows that the decedent would have enhanced his estate by some amount by saving some of his earnings or by prosperous management of his investments, and would, in all reasonable probability, have left that amount upon his natural death to the plaintiff.

to substantially increase his estate by successful investments. *See* 24 AM JUR PROOF OF FACTS 2d at 236.[21]

The net accumulations formula accounting for future investment, is explained below:

---

[21] Although one state, Florida, expressly excludes income from investments continuing beyond the decedent's death from the measurable loss, other jurisdictions permit the trier of fact to consider the prospective loss of inheritance in the form of further increases to the estate as a result of future investments the decedent might have made. *See Solomon v. Warren,* 540 F.2d 777 (1976); *Sternfels v. Metropolitan S. R. Co.,* 73 A. D. 494, 77 NYS 309, *aff'd* 174 NY 512, 66 N.W. 1117 (1903); *Douglass v. Delta Air Lines, Inc.,* 987 F.2d 1336 (5th Cir. 1990).

In *Solomon v. Warren,* 540 F.2d 777 (5th Cir. 1976), the Fifth Circuit affirmed the decision of the federal district court that loss of inheritance was a legally recoverable item of damage under the DEATH ON THE HIGH SEAS ACT (46 USCA §§ 761–768).

In affirming the jury's award of $499,998 for lost inheritance in *Solomon,* the court reviewed the following evidence which had been the basis for the jury award: 1) the value of each parent's estate as reflected in accounting filed in probate court; 2) the life expectancy for each parent; 3) a list of assets including: rental real estate investments, mortgages, mutual funds, a private residence, personal property, proceeds from life insurance policies and cash; 4) federal income tax forms which showed substantial investment income; 5) a business partner testified to the decedent's intent to get involved with two real estate projects of the type which had proved profitable to him in the past; 6) the work history of the couple, earnings, salary, past promotions and potential future promotions, salary increases over the years; 7) an economic expert testified to the future wage income reduced to present value; 8) testimony of the couple's and their children's conservative life styles; and 8) the work history of the children during their minority. *Id.* at 791–92.

> **[I]n determining damages the trier of fact may consider the loss of profits that would have been received as a result of the decedent's efforts and skill. Thus, the beneficiary may be entitled to recover for loss of prospective inheritance as measured by the difference between the amount of the probable increase in the decedent's estate if he had lived, and the amount the beneficiary could derive from his own use of the decedent's capital.** If the beneficiary can make equally profitable use of the decedent's capital he would suffer little or no loss, at least with respect to this element of damages, as a result of the decedent's death.

AM JUR PROOF OF FACTS 2d § 19 at 264 (emphasis added).

A net accumulations formula accounting for future investment was approved by the Fifth Circuit on review in *Douglass v. Delta Air Lines, Inc,* 897 F.2d 1336 (5 Cir. 1990). In *Douglass,* a wrongful death action brought against the airline by the decedent's surviving widow and minor children, the court held that, under Texas law, wrongful death plaintiffs seeking to recover for loss of inheritance damages are not entitled to the present value of the decedent's entire future estate, but only to the present value of that portion of the future estate traceable to the decedent's anticipated adroit management. *Id.* at 1342.

Under this formulation, lost inheritance is calculated as follows: (1) determine the value of the estate at the time of decedent's premature death; (2) determine how many more years the decedent would have contributed to the estate; (3) assume that under the skilful management of the decedent, the estate would grow at a specified rate per year—hypothetically, we assume 10 percent annually; (4) assume further that, by com-

parison, an average investor with no particular expertise could invest the estate in a no-risk investment vehicle for a modest rate of return—hypothetically, we assume 7 percent annually. The beneficiary's damages would be "limited to the premium, above the risk-free rate of return, that the decedent likely would have attained through his or her personal management."[22] In our example, lost inheritance is the difference between 10 and 7 percent, reduced to present value. As noted by the Fifth Circuit in *Douglass,* "the difference between these future values [10 and 7 percent] is the advantage lost by the beneficiaries and owed to them in presently valued dollars." *Douglass, supra* at 1342.[23]

Although tort law in Wisconsin does not generally compensate for the death of an individual for lost profits per se, we have found compensation appropriate when there is a clear causal relationship between the value of the lost earning capacity and the lost profits. *Featherly v. Continental Ins. Co.,* 73 Wis. 2d 273, 277, 243 N.W.2d 806 (1976). We think this rule should apply to a claim for lost inheritance if the facts show that the profits—e.g., increases to the decedent's invest-

---

[22] *See Douglass v. Delta Air Lines, Inc.,* 897 F.2d 1336, 1342 (5th Cir. 1990).

[23] American Family contends that the *"Douglass* court's methodology is the flip-side of the methodology employed by the experts in the instant case." While we agree that the approach employed by plaintiffs' expert appears to be very similar to the method approved by the Fifth Circuit in *Douglass,* we do not agree that defendant's damage computation, comparing the value of the estate the day before and the day after the Schaefers died, is the "flip-side" of the approach endorsed by *Douglass.*

ments—arise from or are created by the personal efforts and prudent investment of the decedent.[24]

We conclude that damages for lost inheritance may be calculated using either the basic net accumulations formula or the variation which considers increases to the decedent's investments. Under the basic approach, evidence that the decedent owned a life insurance policy, although not relevant to the computation of damages, may tend to establish (1) the decedent's propensity toward thrift and savings and (2) decedent's earnings in excess of expenses for personal maintenance and support of dependents. Assuming the heirs bringing the lost inheritance claim are named as policy beneficiaries, which is not the case here, then evidence of the death benefit may also tend to establish (1) the probability that the decedent would have left some or all of the increased estate to the plaintiffs; and (2) the decedent's concern for the future financial welfare of the beneficiaries.

Under the approach which considers increases to the decedent's investments, evidence that the decedent owned a life insurance policy may be relevant to the purposes stated above, and, if the policy has a cash value, it may be capable of investment. Therefore, if the nature of the policy permits divestment and investment and if the policy has a cash value and if it can be established with reasonable certainty that the decedent planned to use the cash value for an investment purpose, then the value of the future investment would be included in the damage computation.

---

[24] *See* 1 Speiser et al., RECOVERY FOR WRONGFUL DEATH AND INJURY § 3:10 at 63 (3rd ed. 1992).

The death benefit per se from a life insurance policy, however, is neither a form of savings relevant to establishing the decedent's propensity toward thrift, nor a form of investment. Therefore, the fact that the heirs in the instant case received proceeds from the death benefit of Donald Schaefer's life insurance policy is simply not relevant to the damage computation.

Accordingly, we conclude that in fixing damages in a wrongful death action for lost inheritance, the jury may properly consider the amounts the decedent, through personal efforts, would have been able to add to the inheritable estate had the decedent lived a natural life span. We approve two methods of computing damages: net accumulations and a variation of this approach which considers increases to the decedent's investments.

While we affirm the court of appeals decision affirming the circuit court's order which in effect would have allowed into evidence the life insurance policy proceeds, we do so for a different reason than that expressed by either of the courts below. We reject American Family's damage computation and hold that evidence of the TransAmerica life insurance policy is admitted to establish one of the relevant purposes explained above. The death benefit of that policy, however, is neither relevant to establishing the claim for lost inheritance, nor relevant to the damage computation. Whether the cash value of the policy is relevant to the damage computation will depend upon the decedent's intent, which may be explored on remand.

For the foregoing reasons we conclude there is no public policy reason to exclude evidence of insurance proceeds in a claim for lost inheritance. Accordingly,

while we affirm, we modify the purpose for which the proposed evidence is admissible. As modified, the decision is affirmed.

*By the Court*—The decision of the court of appeals is modified and affirmed and, as modified, remanded with directions.