Christina L. PIERCE,
Plaintiff-Appellant-Cross-Respondent,

v.

AMERICAN FAMILY MUTUAL INSURANCE COMPANY,
Defendant-Respondent-Cross-Appellant.

Court of Appeals

*No. 2006AP1773. Submitted on briefs April 16, 2007.*
*—Decided May 31, 2007.*

2007 WI App 152

(Also reported in 736 N.W.2d 247.)

On behalf of the plaintiff-appellant-cross-respondent, the cause was submitted on the briefs of *Virginia M. Antoine* of *Habush Habush & Rottier, S.C.*, Milwaukee, and *D. J. Weis* of *Habush Habush & Rottier, S.C.*, Rhinelander.

On behalf of the defendant-respondent-cross-appellant, the cause was submitted on the briefs of *John P. Runde* of *Terwilliger, Wakeen, Piehler & Conway, S.C.*, Wausau.

Before Dykman, Higginbotham and Bridge, JJ.

¶ 1. DYKMAN, J. Christina Pierce appeals from a judgment and order dismissing her claim against American Family Mutual Insurance Company for loss of society and companionship following the death of her mother, Shirley Pierce, under WIS. STAT. § 895.04(4) (2005–06).[1] Christina contends that the circuit court erred in concluding that the wrongful death statute only allows a child to recover for loss of society and

---

[1] All references to the Wisconsin Statutes are to the 2005–06 version unless otherwise noted.

companionship for the death of a parent if the child is a minor at the time of the parent's death. We agree, and conclude that the plain language of § 895.04(4) allows an adult child to recover for loss of society and companionship following the death of a parent.

¶ 2. American Family cross-appeals from the orders denying American Family's motions to exclude the testimony of Christina's expert economist and for a remittitur or new trial following the jury verdict. American Family argues that Christina's expert's testimony did not conform to Wisconsin's legal standard for measuring pecuniary damages in a wrongful death action, and was therefore irrelevant and prejudicial. American Family also argues that the jury verdict was excessive because it was not supported by credible evidence, in that it relied on Christina's expert's testimony. We disagree, and conclude that the circuit court properly exercised its discretion in allowing the expert testimony and denying American Family a remittitur or a new trial. Accordingly, we reverse the circuit court's order dismissing Christina's claim for loss of society and companionship, and affirm the orders denying American Family's motions to exclude Christina's expert's testimony and for remittitur or a new trial.

*Background*

¶ 3. The following facts are undisputed. Shirley Pierce was killed in a snowmobile accident in January 2002. The driver of the snowmobile in which Shirley was a passenger, Todd Devinger, had a liability insurance policy through American Family Mutual Insurance Company. Christina Pierce, Shirley's adult daughter, brought this action against American Family to recover for the wrongful death of her mother. The circuit court granted American Family's motion for

partial summary judgment, dismissing Christina's claim for loss of society and companionship on grounds that WIS. STAT. § 895.04(4) did not allow an adult child to recover those damages for the death of a parent.

¶ 4. Before trial, American Family filed a motion in limine and a motion to strike, arguing that the proffered testimony of Christina's expert economist, Dr. Karl Egge, did not follow Wisconsin's methodology for determining pecuniary loss in a wrongful death action. The circuit court denied American Family's motion and Dr. Egge was allowed to testify at trial as to Christina's pecuniary loss. The jury awarded Christina $234,000 in pecuniary loss for the death of her mother. Following the verdict, Christina moved the court to reconsider its pretrial order dismissing her claim for loss of society and companionship. American Family moved the court for remittitur or a new trial, arguing the jury award was excessive and not supported by credible evidence. The court denied the parties' postverdict motions. Christina appeals and American Family cross-appeals.

*Standard of Review*

¶ 5. This case requires that we interpret WIS. STAT. § 895.04(4), a question of law that we review de novo. *See Estate of Holt v. State Farm Fire & Cas. Co.*, 151 Wis. 2d 455, 458, 444 N.W.2d 453 (Ct. App. 1989). We review a court's evidentiary rulings for an erroneous exercise of discretion. *Martindale v. Ripp*, 2001 WI 113, ¶ 28, 246 Wis. 2d 67, 629 N.W.2d 698. A court properly exercises its discretion if it uses the correct legal standard and, using a demonstrated rational process, reaches a reasonable conclusion. *Id.*

*Discussion*

¶ 6. The parties agree that whether WIS. STAT. § 895.04(4) allows an adult child to recover for loss of society and companionship for the death of a parent is a matter of first impression in the Wisconsin courts. Both assert, moreover, that the statute is unambiguous and urge us to apply its plain meaning. They disagree, however, over the plain meaning of the statute's unambiguous language.

¶ 7. WISCONSIN STAT. § 895.04(4) provides:

> Judgment for damages for pecuniary injury from wrongful death may be awarded to any person entitled to bring a wrongful death action. Additional damages not to exceed $500,000 per occurrence in the case of a deceased minor, or $350,000 per occurrence in the case of a deceased adult, for loss of society and companionship may be awarded to the spouse, children or parents of the deceased, or to the siblings of the deceased, if the siblings were minors at the time of the death.

Christina argues that the unambiguous language of the statute allows all children of the deceased, whether those children are minors or adults, to recover for loss of society and companionship for wrongful death. American Family argues that the unmodified term "children" in § 895.04(4) unambiguously refers to minor children, because the term "children" is commonly understood to connote an age of minority. We agree with Christina, and conclude that the unambiguous language of § 895.04(4) allows an adult child to recover for loss of society and companionship for the wrongful death of a parent.

¶ 8. We are obligated to determine statutory meaning so as to give effect to the laws as enacted by

the legislature. *State ex rel. Kalal v. Circuit Court for Dane County*, 2004 WI 58, ¶ 44, 271 Wis. 2d 633, 681 N.W.2d 110. Our interpretation thus begins with the language of the statute. *Id.*, ¶¶ 44–45. "If the meaning of the statute is plain, we ordinarily stop the inquiry." *Id.*, ¶ 45 (citation omitted).

¶ 9. We agree with the parties that the language of Wis. Stat. § 895.04(4) is unambiguous. "The test for ambiguity generally keeps the focus on the statutory language: a statute is ambiguous if it is capable of being understood by reasonably well-informed persons in two or more senses." *Kalal*, 271 Wis. 2d 633, ¶ 47. We conclude that the term "children" as used in § 895.04(4) cannot reasonably be interpreted in more than one way.[2]

¶ 10. "[S]tatutory language is interpreted in the context in which it is used; not in isolation but as part of a whole; in relation to the language of surrounding or closely-related statutes; and reasonably, to avoid absurd or unreasonable results." *Kalal*, 271 Wis. 2d 633, ¶ 46. We are not persuaded by American Family's argument that the commonly understood meaning of "children" is a state of minority, and thus the unmodified term "children" unambiguously connotes minor children. To the contrary, parents commonly refer to their adult offspring as their "children," and those parents did not cease to have children when their children reached

_____

[2] Because we conclude that Wis. Stat. § 895.04(4) is unambiguous, we need not address the parties' arguments over its legislative history and other extrinsic sources indicating legislative intent. *See State ex rel. Kalal v. Circuit Court for Dane County*, 2004 WI 58, ¶¶ 50–51, 271 Wis. 2d 633, 681 N.W.2d 110.

adulthood.[3] As Christina points out, the word "children" has more than one common usage.

¶ 11. When a word used in a statute has more than one dictionary definition, "the applicable definition depends upon the context in which the word is used." *Id.*, ¶ 49. "Children" is defined as the plural of "child," which is given the following definitions, among others: "A person between birth and puberty"; "A baby : infant"; and "A son or daughter : OFFSPRING." WEBSTER'S II NEW COLLEGE DICTIONARY 194 (1995). The context in which the word "children" is used in WIS. STAT. § 895.04(4) and the surrounding statutes make clear that "children" encompasses both minor and adult offspring. First, the statute specifically states that siblings may only recover for loss of society and companionship if the siblings were minors at the time of the wrongful death, while providing no such limitation for children. Further, the legislature used the term "minor children" five times in § 895.04(2). We have said that "[w]hen the legislature uses different terms in a statute— particularly in the same section—we presume it intended the terms to have distinct meanings." *Johnson v. City of Edgerton*, 207 Wis. 2d 343, 351, 558 N.W.2d 653 (Ct. App. 1996). Because the legislature modified the word "children" with the word "minor" in a different

---

[3] We are also not persuaded by American Family's argument that *Czapinski v. St. Francis Hospital, Inc.*, 2000 WI 80, 236 Wis. 2d 316, 613 N.W.2d 120, provides guidance for the facts of this case. In *Czapinski*, the supreme court addressed recovery for loss of society and companionship under Wisconsin's medical malpractice chapter, WIS. STAT. ch. 655. The court did not resolve the issue of who may recover for loss of society and companionship under Wisconsin's wrongful death statute, WIS. STAT. § 895.04, the issue we address in this case.

subsection of the same section of the statute, we conclude that the only reasonable interpretation of the legislature's unmodified use of the word "children" in § 895.04(4) is that the term includes both adult and minor children.[4]

¶ 12. We next turn to American Family's cross-appeal. American Family raises two issues: the circuit court's denial of its motion in limine and motion to strike, allowing Dr. Egge's testimony as to Christina's pecuniary losses; and the circuit court's denial of its postverdict motion for remittitur or a new trial, based on an excessive damages award reflecting Dr. Egge's calculations. The essence of American Family's argument as to both issues is that Dr. Egge's testimony was inadmissible because it was both irrelevant and highly prejudicial, in that it did not comport with Wisconsin case law establishing the standard for measuring pecuniary loss in a wrongful death case. Christina replies that American Family has waived its arguments as to the admissibility of Dr. Egge's testimony and has not provided a complete transcript sufficient to support the arguments it has made. On the merits, Christina argues that Dr. Egge's testimony was admissible and supported the jury verdict. We agree with Christina as to the merits of American Family's arguments, and conclude

_____

[4] Christina cites a federal case, *Anderson v. Westfield Insurance Co.*, 300 F.Supp.2d 726 (W.D. Wis. 2002), which interpreted WIS. STAT. § 895.04(4) in the manner Christina urges. Although we reach the same conclusion as *Anderson*, that case is not controlling, and we reach our conclusion based on the plain language of the statute.

The other case Christina cites, *Schaefer v. American Family Mutual Insurance Co.*, 182 Wis. 2d 380, 514 N.W.2d 16 (Ct. App. 1994), *modified and affirmed as modified,* 192 Wis. 2d 768, 531 N.W.2d 585 (1995), did not address the issue in this case.

that the circuit court properly exercised its discretion in admitting Dr. Egge's testimony and declining to grant American Family a remittitur or new trial.[5]

¶ 13. In Wisconsin, pecuniary injury includes both loss of support and loss of inheritance. *Schaefer v. American Family Mut. Ins. Co.*, 182 Wis. 2d 380, 385–86, 514 N.W.2d 16 (Ct. App. 1994), *modified and affirmed as modified*, 192 Wis. 2d 768, 531 N.W.2d 585 (1995). "[C]laims for loss of support relate to what the surviving party had the right to expect to receive from the parent during his or her lifetime." *Id.* at 389 (citation omitted). A claim for loss of inheritance focuses on "the difference between what the heirs *would* have inherited and what they *actually did* inherit." *Id.*

¶ 14. American Family contends that Dr. Egge's testimony was both irrelevant and highly prejudicial because it did not follow established Wisconsin methodology for calculating Christina's pecuniary damages. Evidence is relevant if it makes the existence of any material fact more probable or less probable than it would be without the evidence, WIS. STAT. § 904.01, and only relevant evidence is admissible, WIS. STAT. § 904.02. Even relevant evidence is inadmissible if, *inter alia,* "its probative value is substantially outweighed by

---

[5] Because the issue of whether American Family waived its arguments as to the admissibility of Dr. Egge's testimony is close and difficult to determine on the record before us, we decline to apply the waiver rule in this case. "The waiver rule . . . is a rule of judicial administration, and, we may, in our discretion, decide to disregard a waiver and address the merits of an unpreserved issue." *State v. Freymiller*, 2007 WI App 6, ¶ 17, 298 Wis. 2d 333, 727 N.W.2d 334. Thus, we will address American Family's arguments.

the danger of unfair prejudice, confusion of the issues, or misleading the jury." WIS. STAT. § 904.03.

■

¶ 15. First, American Family argues that Dr. Egge's calculation of Christina's pecuniary loss under the support prong was incredible as a matter of law because Dr. Egge testified that Christina's past loss of support totaled $140,000, which exceeded her total after-tax earnings for those years.[6] We disagree. Dr. Egge testified that he calculated Christina's past pecuniary loss as $140,000 by calculating Shirley's after-tax earnings for the years between her death and the date of the trial, the value of the services Shirley would have provided for her daughter, and reducing by the estimated amount of Shirley's earnings that Shirley would have personally consumed. Dr. Egge explained that of the $140,000, $100,000 was cash that would have been available to Christina, and $40,000 was the value of the services Shirley would have provided to Christina.[7] American Family does not contest the validity of the facts Dr. Egge used to compute Christina's loss of support damages or argue that loss of support cannot include loss of services.[8] Instead, American Family's

[6] Christina argues that American Family's contention that Dr. Egge's calculation of Christina's loss of support is incredible as a matter of law goes to the credibility rather than the admissibility of Dr. Egge's testimony. American Family replies that Dr. Egge's testimony is not relevant because its erroneous method of calculation renders it unhelpful to the jury. We need not resolve this dispute, because we do not share American Family's interpretation of Dr. Egge's testimony as incredible.

[7] Dr. Egge's calculations were shown in an exhibit.

[8] We have said that Wisconsin courts interpret "pecuniary injury" broadly to include "loss of any benefit which the beneficiary would have received from the decedent if the decedent had

738

argument is limited to the proposition that the $140,000 figure exceeds the total amount of Shirley's earnings for that timeframe and is thus incredible. Because Dr. Egge explained that the $140,000 is a combination of the value Christina lost in estimated cash support and in the value of the services her mother would have provided, we find American Family's argument unpersuasive.

¶ 16. Next, American Family argues that Dr. Egge's testimony was both irrelevant and highly prejudicial because it failed to follow Wisconsin methodology for calculating Christina's loss of inheritance.[9] In *Schaefer*, 192 Wis. 2d at 775, the supreme court defined loss of inheritance as "the pecuniary value of the addition to the estate which the decedent in reasonable probability would have accumulated and left to his or her heirs had the decedent lived a natural life span." The court approved a "net accumulations" approach to determining the value of a plaintiff's loss of inheritance. *Id.* at 792–97. That method consists of "determin[ing] the decedent's probable gross lifetime earnings, deduct-[ing] the amount he [or she] would have spent for his [or her] own maintenance, gifts, support of dependants, and other expenditures, and then reduc[ing] the re-mainder to present value." *Id.* at 793. American Family essentially argues that Dr. Egge's testimony failed to follow that methodology in two respects: by valuing the amount of Shirley's estate at the time of her

lived." *Estate of Holt v. State Farm Fire & Cas. Co.*, 151 Wis. 2d 455, 460, 444 N.W.2d 453 (Ct. App. 1989).

[9] Again, we resolve this issue on the merits, and need not address Christina's arguments over whether American Family's arguments are better addressed to the credibility rather than admissibility of the evidence.

expected retirement rather than at the time of her expected natural death; and valuing the total amount of Shirley's estate rather than the additional amount Christina would have expected to inherit but for Shirley's untimely death. We reject both contentions.

¶ 17. Dr. Egge testified that the present value of the future after-tax economic loss to Christina was $176,000. He testified that in reaching that amount, he assumed that Shirley would have worked until age sixty-six, when she would have received the maximum benefits through social security or the federal government. He also testified that his calculation included both the cash value of Shirley's earnings above her own consumption and the value of the additional services Shirley would have provided to Christina. He specified that of the $176,000, about $50,000 was for loss of services and $126,000 was the value of the amount Shirley could have saved over the course of her lifetime until retirement. Dr. Egge further stated that he did not think it was very likely that Shirley would have saved every penny that she could, and he did not know the exact amount she actually would have saved. He stated that $126,000 was the value of the amount Shirley had the capacity to save at the time of her expected natural death at age eighty-one.

¶ 18. On cross-examination, American Family elicited from Dr. Egge again that he could not say with absolute certainty that Shirley would have saved the money she earned above her own consumption, only that she had the capacity to save that amount. Dr. Egge also admitted that he could not calculate exactly the amount Shirley would have collected in retirement, but estimated she would have collected enough from social security, federal employee retirement money, a government savings account, or possibly a part-time job, so

that she would not have had to deplete her savings between retirement and her expected natural death. Dr. Egge further testified that the value of Shirley's estate was $20,000 at the time of her death, and that he estimated the total potential pecuniary loss to Christina was $316,000, including the amount Shirley had the potential to accumulate as an estate by the time of her natural death and the value of the services Shirley would have provided to Christina. We conclude that Dr. Egge's testimony comports with the methodology set forth in *Schaefer* and that Dr. Egge's inability to testify with certainty the amount Shirley actually would have accumulated in her estate at the time of her natural death did not render his testimony irrelevant and prejudicial.[10]

¶ 19. Finally, we reject American Family's argument that the jury award was excessive because it necessarily reflected an adoption of Dr. Egge's testimony. First, we have concluded that Dr. Egge's testimony was not contrary to the *Schaefer* methodology for calculating pecuniary loss. Second, the jury award was more than the amount reached by American Family's expert and less than the amount reached by Christina's expert; we do not agree with American Family that the jury was required to adopt the reasoning of its expert or that the circuit court was required to grant it a remittitur or a new trial because the jury did not find

---

[10] The *Schaefer* court listed as relevant evidence to a claim for loss of inheritance "that which is relevant to the decedent's ability to save and to otherwise accumulate money or property, the decedent's earnings in excess of expenses for personal maintenance and support of dependents, and the decedent's disposition toward his or her beneficiaries." *Schaefer*, 192 Wis. 2d at 775.

damages in the amount that American Family's expert calculated.[11] Accordingly, we affirm the circuit court's decision to allow Dr. Egge's testimony and to deny American Family's motions for remittitur or a new trial.

*By the Court.*—Judgment and orders affirmed in part; reversed in part and cause remanded for proceedings consistent with this opinion.

---

[11] We note that American Family only submitted the transcript of Christina's expert's testimony, and did not provide this court with the transcript of its own expert's testimony or the other evidence submitted to establish Christina's pecuniary loss. The parties agree, however, that Christina's expert testified that Christina's loss was $316,000, American Family's expert testified that Christina's loss was approximately $125,000, and that the jury awarded Christina $234,000.